SUMMERS, Justice.
On June 21, 1973 defendant was charged by bill of information with having committed the offense of Armed Robbery. La.R.S. 14:64. He was tried by jury, convicted and thereafter sentenced to serve 35 years at hard labor.
During the course of the proceedings defense counsel reserved 29 bills of exceptions, 23 of which were perfected. In this appeal defense counsel either expressly or tacitly abandoned eight of the reserved bills. Some of the remaining fifteen bills will be grouped and treated together because of the similarity of the issues and facts involved.

Bill 1

This bill is based upon an allegation that women had been systematically excluded from the jury which tried the de *584 fendant, because the law did not permit them to serve unless they had filed a declaration of their desire to do so. La. Const. art. VII, |J 41; La.Code Crim.Proc. art. 402. This was the law at the time of this trial and we have repeatedly upheld its validity. State v. Snedecor, 294 So.2d 207 (La.1974).

Bill 4

Defense counsel filed a motion for a continuance alleging that certain evidence requested in a pending rape case against this same defendant had not been produced and this evidence was necessary to the defense of this robbery prosecution. As the trial judge’s per curiam sets forth, the evidence sought by way of pretrial discovery in the rape case was never produced. When the motion for continuance was filed, it was then known that the evidence would not be produced. Under these circumstances the motion for continuance was not well-founded, and its denial by the trial judge was proper.

Bills 6 and 8

During the trial the District Attorney was examining Geneva Cross, one of the victims of this robbery. He propounded a question to her concerning the identification of the defendant, to which the defense objected. The objection was overruled and the witness identified the defendant in court as the perpetrator of the robbery. Another bill was reserved after another victim, Bessie Page, made a similar in-court identification. The crux of defendant’s objections here is that these in-court identifications were tainted by the allegedly defective procedure of an earlier photographic lineup, the State having failed to lay the proper foundation for the admissibility of the in-court identification.
Pretermitting the admissibility of the photographs, to which we will refer hereafter, this Court has held that an in-court identification is always allowable if it is shown that the totality of the circumstances indicate that there is an independent basis for the identification. See State v. Newman, 283 So.2d 756 (La.1973). Such an independent basis exists here. The perpetrator of the crime stood within inches of both victims, and the three of them were in an automobile together for about an hour and a half. There was, therefore, ample opportunity for the witnesses to thoroughly familiarize themselves with the appearance of the perpetrator of the crime.
 It is further urged that the trial judge erred in allowing the in-court identification prior to the laying of the foundation as to the independent nature of the identification. Although it is perhaps advisable that the State lay the proper foundation first, the important consideration on appeal is that a basis for an independent identification exists of record. In State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972) we said:
“As we understand this contention, the State did not lay the proper predicate for the introduction into evidence of the narcotic paraphernalia seized from Clouatre —that is, custody and connexity were not established. Reliance is placed upon Article 773 of the Code of Criminal Procedure to sustain the defense position. That article reads:
‘Neither the state nor the defendant can be controlled by the court as to the order in which evidence shall be adduced; but when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible.’
“Aside from the fact that the objection to the admissibility of this evidence as the fruit of an unlawful arrest, search and seizure had already been determined in the motion to suppress, the requirement that the foundation must be laid before the evidence is admissible is itself subject to exceptions.
*585 “The basic purpose of the quoted article, as the comment explains, is to allow counsel to have a free hand in the conduct of his case. Furthermore, frequently the admissibility of some evidence depends on whether other evidence is admitted. Necessarily, such related evidence cannot be introduced at the same moment and frequently requires the joint testimony of several witnesses. Usually, therefore, the first piece of evidence is admitted subject to being ‘connected up’ or subject to the second related piece of evidence being admitted.
“Since it has not been shown that this testimony and evidence exhibited to the jury was not properly ‘connected up’ by subsequent evidence, the objection has no merit.”
The issue presented by these bills is the same which was resolved by the decision in the Clouatre Case. These bills have no merit.

Bills 7 and 9

In these bills defense counsel asserts that the trial judge erred in allowing the State to question one of the witnesses concerning the length of time spent in an automobile after the robbery by the victims and the defendant. It was the defense contention that the State sought thereby to foster an impression in the minds of the jury that defendant, while in the automobile, committed another crime.
The State’s interrogation of the witness, however, elicited no testimony relating to another offense. The testimony was relevant to show the length of time the perpetrator of the crime spent in the presence of the witnesses, thus demonstrating their ability to make an in-court identification on an independent basis. State v. Pratt, 255 La. 919, 233 So.2d 883 (1970).

Bills 13 and 14

These bills were reserved when the trial judge, over objection, allowed T. C. Bloxom, Jr., the investigating officer, to testify as to the procedures he followed in his investigation. Specifically, the testimony concerned the money found on the defendant which the investigator exhibited to the victims, and the photographs Bloxom used in the photographic lineup. The defense asserts that Officer Bloxom’s testimony was hearsay and irrelevant.
The testimony was not hearsay but was a recitation of personal experience. The evidence was relevant also to establish a foundation for the admission of the State’s evidence of the photographs used in the photographic lineup.

Bills 15, 17, 18 and 19

When Officer Bloxom was allowed, over defense objection, to testify to the procedure followed in the pretrial photographic lineup, these bills were reserved to preserve the defense objections. This was after the State had offered as evidence, over defense objection, the photographs. The defense contention on these bills is that all evidence relating to the photographic lineup was inadmissible because he was not represented by counsel at that time and place. This, he asserts, is a denial of the right to counsel guaranteed by the Sixth Amendment to the United States Constitution.
The photographic lineup was conducted during the investigative phase of this case before defendant was arrested. At that time defendant was not a suspect until both victims picked his photograph from a group of mug shots. The photographic lineup was properly conducted, was not suggestive, and the presence of counsel was not required. State v. Daniel, 297 So.2d 417 (La.1974).
These bills are without merit.

Bill 23

Defendant’s brother, Roy Lee Webb, testified on direct examination in detail to his activities in company with defendant on *586 the night of the crime, which if believed, would establish an alibi for the defendant at the time of the robbery on June 21, 1973. On cross-examination the witness was asked if he was with his brother on June 14, 1973. Having answered “I don’t know.” to this question, the witness was then asked about June 19, 1973, to which he replied that he couldn’t remember. The witness was then asked if he knew the significance of June 19 and if he had ever attended a celebration on that date. The witness also replied negatively to these questions and to other questions pertaining to his familiarity with Emancipation Proclamation Day—June 19. Defense counsel then moved for a mistrial, contending that the State had made an impermissible reference to race.
Article 770(1) of the Code of Criminal Procedure provides that, upon motion of the defendant, a mistrial should be ordered when a remark or comment by the district attorney refers directly or indirectly to “Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury . .
The reference to Emancipation Proclamation Day—a day particularly significant to blacks—was relevant. It was designed to test the alibi witnesses’ ability to remember events associated with certain days close in point of time to June 21, 1973, the day he recalled so vividly the activities in which he and his brother were engaged together. This questioning was relevant and within the realm of permissible cross-examination. No prejudicial import was even remotely to be inferred from this reference to Emancipation Proclamation Day. The case does not fall within the contemplation of Article 770, and there is no merit to this bill.

Bill 26

In his closing argument the District Attorney, in referring to the scene of the crime, said: “I don’t know how many of you have been in that particular vicinity, but that is a fairly well lighted area.” At that point defense counsel objected and moved for a mistrial, arguing that there was “No evidence in the record of that.” The trial judge sustained the objection but refused to declare a mistrial. To the ruling defense counsel reserved this bill.
According to Article 774 of the Code of Criminal Procedure the scope of closing argument is “confined to evidence admitted, to lack of evidence, to conclusions of fact that the state or defendant may draw therefrom . . . .” Testimony in this record makes reference to lighting in the area referred to by the District Attorney. Willie Benton, who identified defendant as having been at the scene of the robbery shortly before it occurred, indicated that the “lights shining” allowed him to make the identification. A permissible conclusion was therefore drawn by the District Attorney based upon the evidence presented. State v. Wilkerson, 261 La. 342, 259 So.2d 871 (1972); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). Actually, the ruling of the trial judge was incorrect and in favor of the defendant. The defense has no grounds for complaint.
There is no merit to this bill.

Bill 28

Again defense counsel asserts that the District Attorney exceeded the scope of closing argument, when in his rebuttal argument, he said, “You know darned well what we were looking for when we got a search warrant and went out there to that house, we were looking for that pistol—didn’t find it.”
During cross-examination Officer Blox-om was specifically asked by defense counsel if a gun was discovered during the search of defendant’s house; he answered that although defendant signed an agree *587 ment to permit the search of his house, no gun was found.
This bill lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., concurs in decree, finding treatment of Bill No. 28 inadequate.