KLIEBERT, Judge.
Alvin Alexis and Kenneth Hall, defendants, were indicted by grand jury on September 21, 1989 with attempted armed robbery of Clarence Henderson and the second degree murder of Corey Henderson. Defendants pled not guilty. On September 27, 1989, Hall filed a motion to quash the indictment and on October 4, 1989, he moved for a bill of particulars and a supplemental bill of particulars. Following the hearing[1] on the motion to quash, the trial court denied Hall’s motion to quash and supervisory writs were applied for on November 3, 1989. This Court granted the writ (No. 89-K-721) and ordered the state to file an answer to defendant’s motion for bill of particulars or a stipulation of facts of the crime charged, and set the matter on the appellate docket for briefing and argument. On November 2, 1989 the state answered the bill of particulars and supplemental bill of particulars. For the following reasons, we annul and set aside the denial of the motion to quas.h and grant the motion to quash the indictment of second degree murder.
No factual evidence or stipulations were submitted to the court on the motion to quash. The only record facts are those contained in the state’s answer to the bill and supplemental bill of particulars. These answers show the deceased was killed as a result of the direct actions of a co-victim of the armed robbery while acting in self-defense or by a third party bystander acting in defense of others.
The motion to quash is essentially a mechanism by which to raise pre-trial pleas which do not go to the merits of the charge. State v. Rembert, 312 So.2d 282 (La.1975). At the hearing on the motion to quash, evidence is limited to procedural matters; the question of factual guilt or innocence of the offense charged is not raised by the motion to quash. State v. Rembert, supra.
In State v. Russell, 292 So.2d 681 (La. 1974) at page 685, the Supreme Court said:
“The purpose of this written accusation [this indictment] is (1) to inform him fully and clearly of the crime charged against him; (2) to inform the court of such charge so that it may determine whether the facts alleged constitute the crime and will sustain a conviction thereof, and justify proceeding to trial; (3) to enable the defendant to prepare his defense against such charge, and to take any appropriate proceedings prior to his trial, such as the filing of a motion to quash for insufficiency; and (4) to enable him to plead a judgment rendered against him, either of acquittal or conviction, in bar of a subsequent prosecution for the same crime charged, or for which he was formerly tried.”
“Taken together, the codal articles mean that when a motion to quash is based upon the ground that the offense charged was not committed, the trial judge is restricted to a consideration of the bill of information as explained or limited by the bill of particulars. They permit no preliminary examination of guilt by the reception of evidence on the motion to quash.” State v. Snyder, 277 So.2d 660, 662 (La.1972).
Defendants’ motion to quash is based on LSA-C.Cr.P. Articles 532(5)[2] and 485[3] and the case of State v. Garner, 238 *959 La. 563, 115 So.2d 855 (1959). Pursuant to the indictment and answers to the bill of particulars filed by the state, defendant was sufficiently apprised of the charge against him (second degree murder) and of the essential facts constituting the charge; that the victim was killed by a co-victim acting in self-defense or by a third party bystander acting in defense of others. Therefore, according to defendants, the bill of indictment charging defendants with the second degree murder of Corey Henderson should be quashed under the ruling of State v. Garner, supra.
State v. Garner, supra, is on point. There, the victim of an armed attack shot at the attacker in self-defense and hit and killed an innocent bystander. In interpreting the applicable manslaughter statute, the court held the word “offender” in the statute contemplated the actual killer, thus precluding charging the armed attacker with a homicide.
The pertinent language of the second degree murder statute, LSA-R.S. 14:30.-1A(2), at issue here is essentially identical to the statute interpreted in Garner. Both statutes require an interpretation of whether the “offender” is the actual killer. LSA-R.S. 14:30.1A(2) provides:
“Second degree murder is the killing of a human being:
* * * * * *
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.”
The Gamer statute, LSA-R.S. 14:31(2)(a), provided:
“Manslaughter is:
* * * * * *
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person;”
In State v. Kalathakis, 543 So.2d 1004 (3rd Cir.1989), writ granted, 548 So.2d 1240 (La.1989), the Court of Appeal, Third Circuit, upheld Kalathakis’ manslaughter conviction. The Louisiana Supreme Court granted writs but has not yet acted.
The defendant, Anita Kalathakis, along with Patrick Langley and Larry Calhoun, were manufacturing methamphetamine in a mobile home. The police suspected the mobile home served as a laboratory for the production of methamphetamine; consequently, they raided it. As they approached the mobile home, they positioned themselves around it. Shortly thereafter they noticed a heavily armed person, later identified as Calhoun, leaving the mobile home and walking toward a shed behind it. Calhoun had dogs with him. The dogs began barking, whereupon Calhoun directed his flashlight toward the officers. The officers then stood up and identified themselves. Calhoun began to run down the driveway. Three officers and two police dogs pursued him. As this chase began, the other officers rushed the mobile home.
During the pursuit of Calhoun, approximately one-fourth of a mile from the mobile home, Calhoun turned quickly and fired a sawed-off shotgun, hitting an officer. The officers returned the fire, killing Calhoun.
Throughout this period, Kalathakis was inside the mobile home where she was eventually arrested.
Kalathakis, as did defendants herein, moved to quash her indictment arguing it was not founded in the law. The trial court denied the motion and Kalathakis, on *960 appeal, again urged her motion to quash, citing Garner.
In distinguishing Garner, the Third Circuit found the deceased in Garner was an innocent third party who, by mere fate, was at the scene of the crime and was shot by the victim of the crime. In Kalathakis, the deceased, Calhoun, was an active participant in the crime who was toting a sawed-off shotgun and wearing an ammunition belt when he was approached by the police. The Court further distinguished Kalathakis from Garner in that in Kalathakis the fatal shots were fired by police officers whom both the deceased and Kalathakis were aware might attempt to deter their activities.
In State v. Statum, 390 So.2d 886 (La.1980), cert. denied, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 619 (1981), the defendant was driving his car in which Tammy Lonidier, his wife’s thirteen year old sister, was his passenger. As they drove toward a local skating rink the defendant informed Tammy that he desired to have sex with her. Tammy responded by opening her door and exiting the car as it was travelling in excess of fifty miles per hour. Tammy died the next day from multiple injuries she sustained in her fall from the car.
The defendant was convicted of manslaughter. The Louisiana Supreme Court affirmed the conviction. The Court found that all the elements of manslaughter [LSA-R.S. 14:31(2)(a) ] were satisfied in that a homicide was committed when the defendant was attempting to perpetrate carnal knowledge of a juvenile, a felony not enumerated in LSA-R.S. 14:30 or 14:30.1. The Court noted that Tammy exited the car obviously because of the defendant’s attempt to have sex with her; thus the offender was not the actual killer, but his actions resulted in the killing. There was no mention of State v. Garner, supra, in the decision.
The facts of both, Kalathakis and Statum, are distinguishable from the matter before us, and in Garner. In Kalathakis, a co-perpetrator of criminal activity was killed by a third party policeman attempting to enforce the law. In Statum, defendant’s expressed criminal intent caused the deceased to jump front a moving vehicle, cahsing her death.
In both, the case before us and Garner, the “trigger man” was not involved in the underlying criminal activity, as was the case in both Kalathakis and Statum.
Due to the similarity of facts we conclude Garner[4] mandates a holding that the facts of this case do not state a crime chargeable under LSA-R.S. 14:30.1(A)(2). Therefore, the trial court erred in denying defendants’ motion to quash the indictment of these defendants for the second degree murder of Corey Henderson.
Defendants also contend that the trial court erred in refusing to quash the armed robbery indictment because the' grand jury’s deliberation was tainted by its improper consideration of the second degree murder charge. This is without merit. The district attorney is given absolute discretion in the institution of criminal charges. State v. Perez, 464 So.2d 737 (La.1985). The district attorney’s exercise of his power to control each criminal prosecution pending in his district does not operate to supersede federal and state constitutional guarantees and therefore cannot be disturbed by the judicial branch. State v. Issac, 527 So.2d 1045 (5th Cir.1988), writ denied, 532 So.2d 175 (La.1988).
For the foregoing reasons, we annul and set aside the trial court’s ruling denying the motion to quash the defendants’ indictment for the second degree murder of Corey Henderson and, in lieu thereof, grant the motion and remand the case to the trial court for further proceedings.
ANNULLED AND SET ASIDE IN PART; MOTION TO QUASH GRANTED AND CASE REMANDED.

. At the hearing defendant Alexis joined in the motion to quash.

. Code of Criminal Procedure Article 532(5) provides:
"A motion to quash may be based on one or more of the following grounds:
******
(5) A bill of particulars has shown a ground for quashing the indictment under Article 485.”

. Code of Criminal Procedure Article 485 provides:
“If it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. The defect will be cured if the district attorney furnishes, within a period fixed by the court and not to exceed three days from the order, another bill of particulars which either by itself or together with *959 any particulars appearing in the indictment so states the particulars as to make it appear that the offense charged was committed by the defendant, or that there is no ground for quashing the indictment, as the case may be.”

. Since the Supreme Court granted a Writ of Certiorari in Kalathakis, it may overrule or modify the results of Garner. Until it does, however, we believe Garner controls the ruling in this case.